Thank you, Your Honor. Good afternoon. My name is Pat Lundvall. I present on behalf of the appellants who we refer to as the medical groups, and I intend to reserve three minutes of my time for rebuttal. Okay. Before this court, the medical groups seek to apply existing law that is found in cases like Davila, Blue Cross, Marin, Hanson, and many others. The insurance companies, on the other hand, seek to evade that law, or even worse, they seek to change that law. They urge tests upon this court that are not found in any statute, any case law, or not even reflected on the text. Congressional intent is reflected in the text of ERISA. If these tests are embraced, they will do two things. They will expand federal court jurisdiction, and they will sub silentio over rule existing law. So if there's a bridge too far in this case, it is the position of the insurance companies. This rate of payment case was brought in state court, asserting state law claims, and state courts back is where it belongs. In the order refusing to remand back to state court, the district court committed at least three fundamental errors. First, the district court focused upon our first claim, our implied and back contract claim, stating a personal belief, without any legal support, that there should be a difference between express contracts and oral contracts on one hand, and implied and back contracts on the other. And therefore, Marin did not aid in our efforts to remand. Second, rather than accept the allegations in our pleadings at face value, as it was required to do with this threshold jurisdictional analysis, the district court expressly raised, and I quote, a conceptual problem of proof. He expressly doubted the medical group's ability to marshal sufficient evidence to prove formation of the alleged and back contract. Procedurally, he jumped to the merits of the case rather than critical to his finding of complete preemption. But questions of proof have no place in the jurisdictional analysis, which must be based solely upon the allegations of our pleadings. Third, the district court did not even analyze any of the other independent duties breached by the insurance companies, as alleged in our pleadings, which undergird the multiple other claims before dismissing them as completely preempted by ERISA. Even if one claim is preempted, that doesn't mean that other claims must be preempted. Importantly, all of the claims that were asserted in our pleadings were based on independent legal duties separate from any ERISA plan terms. Counsel, could you just take me through, as a matter of Arizona law, what are you going to need to, I mean, if this were to go forward, what will you need to prove to establish your implied in fact contract claim? Under Arizona law, we make an allegation that, in fact, there's an implied in fact contract. We assert the conduct that demonstrated the assent to those terms. We also demonstrate that there has been a breach of the contract that has been alleged, and we assert damages then as a result of that. That is what's required then under Arizona law for an implied in fact contract. And what was the conduct, I guess, the conduct that established the defendant's assent to this contract? Wasn't it just like paying out benefits under the plan? Or is there something separate from that that you can point to? Separate from that, your honor, that we can point to, and that's we asserted and alleged then in our first, in our pleadings. In fact, what we did is we demonstrated that across this course of conduct, across a 10-year period of time, from 2008 to 2018, that during that period of time, the parties used different, what they called rental agreements, rental networks, so as to establish then what a reasonable rate of payment may have been. Under that arrangement, we had submitted our claims for payment. Those claims for payment were determined then as payable, and when they were payable, they were paid at a certain rate. When we accepted that, that demonstrated our assent then to the percentage of payment that was given to us or paid to us then by the insurance companies. And were those rates at which you were paid under these previous arrangements established in any way under the plan, or were they just the amounts that you and the payer came up with independently of some provision of the plan? Independently of the provision of the plan, your honor. In fact, we don't even know what the terms of the plans are. There's no evidence in the record as to what the terms of the plan are. We asserted no plan terms upon which that we were bringing suit. We made no allegations that we were seeking benefits under any of the plans. Our claims were independent of the plans, and since they were independent of the plans, those plans then are not arrested preempted under section 5021B. When you look at the test that was described then in Davila, analyzing the two-part test that is required then by the court to determine whether or not the arrestor provides the exclusive civil enforcement benefit, it's a two-part test. We've thoroughly covered that first prong under Davila in our briefs. In sum, because we're not seeking to recover benefits, or we're not seeking to enforce any plan terms, we are not a participant or a beneficiary, and we did not assert claims. Do you dispute that you could have brought an arrestor claim? I know that you haven't, but do you dispute that you could have? We do dispute that we could have for this reason, your honor. The claims that we asserted did not make it express that if the claims that are being asserted do not arise under plan terms, then we are not a participant, nor are we a beneficiary. Maybe I'm not understanding your answer, but I understand that the way you framed your claims, they're not coming under a plan, but could you have brought them under a plan? No, your honor, because of the nature of the legal duties that we asserted. Moreover, this court answered that. But if I can push in the same direction as Judge Hunsaker, it's not what you did assert, it's what you could have asserted. Understood, your honor. But as this court made clear in Moran, that it is not the claim, if in fact that a provider, a medical provider has a choice to assert either an arrestor claim or to assert a state law claim. The mere fact that you exercise that choice does not mean that you meet prong number one. And so to the extent that what we did is assert the legal duties arising independent of any plans and without asserting any plan terms or any terms under a plan or seeking enforcement under any plan, we are not either a participant or a beneficiary seeking to enforce plan terms and therefore prong number one then doesn't apply. If I could turn the court's attention into prong number two under Davila. Determining the origin of the legal duty being sued upon is the question before the court. Under existing laws made clear by this court in Hanson, you're looking for the origin of the legal duties that were being sued upon. As long as those legal duties are independent of an arrestor regulated plan, there is no complete preemption. And if the insurance companies fail to demonstrate either prong one or prong two of Davila, there's no complete preemption. Without complete preemption, there is no federal court jurisdiction and remand is mandated. Under that second prong of Davila, your search for the origin being sued upon is claimed from the base of our pleadings. The origin of the duties breached isn't found in the plans themselves. Our pleadings make no reference to any plan provisions nor do we seek enforcement of any plan terms since the plans are completely irrelevant to our claims. And since our claims did not depend upon plan terms or seek benefits there under, the legal duties being asserted are independent. Now, given the time, what I'd like to do is to address then the three arguments that were made by the insurance company. They began by conceding that if we had a written contract or an oral contract that was being sued upon, there would be no complete preemption since the independent legal duty is found either in the written document or an oral promise. But they contend that somehow, because we alleged an implied in fact agreement, that that changes the analysis. But under Arizona law, express contracts, oral contracts, implied contracts, all have the same legal import. If breached, they all have the same legal result. So to suggest that that's a bridge too far, as the district court did, or to suggest that somehow that they should be treated differently as the insurance companies contend in their briefs, it just simply does nothing but flat out ignore black letter law under Arizona. More directly, they advance three arguments on appeal. And when they advance these three arguments, notably what they do is they dispute our factual contentions. And then they take their disputed facts or their version, and they apply them to three new tests and that they are urging on this court. And what they do under their first argument, what I call their standard plan administration argument, they claim under their own set of facts, that the facts yield nothing more than standard plan administration. They then suggest to this court that you have to discern the difference between standard plan administration and discretionary acts that are taken by the insurance companies. And only if those discretionary acts then create some type of an independent legal duty, and there's breach of those discretionary acts, may the court then find no complete preemption. The suggested test regarding the difference between standard plan administration and discretionary acts, a form of that test was actually urged on the court in Dabila, but not embraced in Dabila. And in fact, their proposed test is nothing but a slippery slope that has no objective guidelines for district courts. Moreover, this proposed test is plainly When a phone call was made between the provider and a plan administrator, when that occurred to Marin, that was an act of standard plan administration. Verifying coverages and rates is something that plan administrators do countless times every day. There is no suggestion and there's no question that if United's proposed test were adopted by this court, Marin would have completely preempted. Regardless, when you look at our pleadings, a simple review of our pleadings reveals that the allegations concern far, far more than what's described as standard plan administration. Using a false third party to hide the misrepresentations of the insurance companies about the rates that were being paid. Threats or coercion or extortion in an effort to force the modification of the relationship between the medical groups and the insurance companies and all the other exploitive acts that were asserted in our pleadings, they can hardly be construed as standard plan administration. The second argument that they advance, and that is this, that they contend that there's somehow a difference with the distinction between proof of a telephone call and the disputed word or this disputed conduct underlying then our long-standing relationship so as to serve as a foundation then for implied contract. But since oral contracts and implied contracts, they have the same legal effect. Both disputes are nothing but contract formation disputes. Both disputes have nothing to do with the origin of the legal duty being sued upon. In fact, if you take their argument to logical conclusion, when they dispute the assert, what they concede is the independence of the legal duty that we are advancing our claims upon. That concession objecting to the formation of the contract underscores the fact that we are not bringing any claim for plan review, seeking any plan benefits, and as long as we're not doing that, then in fact that there is no complete preemption. The last argument, and I'm just going to make this quickly then in light of the time, they advance it because of test, and that because of test is not the test then that is been embraced then either by this circuit or by the Supreme Court. In fact, it's somewhat ridiculous because each and every one of these cases originates because of an agreement between a provider, or each and every one of these cases originates because that there is a insurance company that has provided benefits, but it is the nature of the contract. It is the nature of the conduct. It is the nature of the legal duty being sued upon that is a dispositive issue, and as long as we are not seeking plan benefits, seeking enforcement of plan review, or seeking any type of claims then that require the terms of the plan to be enforced, then those are independent duties, and therefore they are not completely preempted, and we would ask this court then to find no jurisdiction and to remand this case in full then back to the district court. Okay, thank you very much. You've taken your time plus a few minutes, plus a few Good afternoon, your honors. I may please the court. There are, of course, multiple overlapping doctrines and factors involved here, but I think we can simplify matters for purposes of the argument by saying that we, United, ultimately agree with plaintiffs that as they say on page five of their reply that the decisive question for complete preemption purposes here is, quote, whether the state law claimant issue is predicated upon a duty originating in the ERISA plan terms or a duty originating elsewhere. That articulation establishes complete preemption here because the implied state law contractual duty plaintiffs want to establish, contrary to what Ms. Lundwall just argued, originates entirely from United's authorization for United, for ERISA plans to pay participants benefit claims in the amounts prescribed by the terms of their ERISA plans. Now, how is that so? Meaning, if I take the evidence from the other side, it sounds as though your client has been dealing with the emergency groups without any reference ever to the ERISA plans. They've just said, here's what we're going to pay. And did you ever say ERISA? Did you ever even read the word ERISA when you said, here's what we're going to pay and we're Well, of course, what we have to rely on is their complaint, not the argument you just heard from Ms. Lundwall. Their complaint is perfectly clear. Yes, all of the claims arise from the payment of claims made under ERISA plans. They described this on page six of their reply brief, Your Honor. Let me just read. They say, United has argued repeatedly that it paid benefits to the medical groups pursuant to the various plan terms. The medical groups have never disputed that assertion. And then again, on page 18 of their reply brief, they essentially say the same thing. Here, the evidence of United's assent includes its conduct in a historical course of dealing. Notably, United's long history of reimbursing the medical groups out of network claims at 75 to 90 percent of their bill charges before abruptly slashing their rates. Now, it's not just in the brief, though, Your Honor. If you look at paragraphs 29 through 55 of the complaint, and most of you say their claim where their claim is made under ERISA, were they saying you owe us because of ERISA? Absolutely. They were. What's your what's your what's your evidence that they say we are claiming under ERISA rather than we're claiming for services performed at the value we think they're worth? Well, I think what they consider on page six of their reply was agreeing when we say we only ever paid under ERISA plan terms. That's all we have power to do is to pay pursuant to ERISA plan terms. We can't make payments outside an ERISA plan. The terms that are paid more than ERISA plan authorizes. But if that's true, any plan administrator under ERISA always has complete preemption for any claim against it, because if that's true, all you need to say is we have no authority to pay for anything outside the plan. Therefore, any claim against us is completely preempted and Marin is wrong. Is Marin wrong? No, your honor, and it's not quite the argument here. I think everything you said is true to the extent the claim is based on historical payments of claims under benefit plans. If that's all there is, then yes, any type of claim would be preempted by plaintiff's own logic, your honor. A participant could show up and assert the existence of an independent contract that has arisen because, you know, for two years, the participant was being paid, you know, X amount of benefits, and then they're being paid X minus 10. And the participant would argue, and providers would say, they could make this claim independent of ERISA and say, I have a state law duty based on this historical payment of claims under my ERISA plan. I don't think any court in America would think that that is not completely preempted, because it arises solely out of the payment of benefit plans. It can't be disaggregated from the plan terms in the way that Marin, the contract in Marin did it. To be clear, in Marin, four different times in your honor's opinion, your honor identified the fact that the claims were arising out of an express agreement, even though, as here, the providers in that case, were arguing there was an implied contract. But the court's emphasis was on the existence of the independent duty, because that duty to pay a particularized amount could be enforced without any reference to the ERISA plan whatsoever. You didn't need to know what the amounts, the payment history had been, you didn't have to know how it had been administered, anything like that, you just look at the provider agreement, and that creates an amount. Now, what the providers here are arguing is that Marin essentially established a distinction between the right to an amount, the right to a rate, versus the right to the payment itself. And they agree that if you're asserting a right to a payment, that is completely preempted. But Marin, they actually have this backwards. In Marin, by saying there was an express agreement there, the emphasis was on the fact that there was an expressive agreement to pay a particular amount. It has never been. Can I interrupt for a minute? But is your distinction that since this is implied in fact rather than expressed, that makes all the difference? How can that be? Because if it's a valid contractual obligation, whether it's because of an explicit written contract, because if it's an oral contract, or because it's a contract implied at law under Arizona law, I don't see the difference with respect to ERISA. And that's the key, the difference with respect to ERISA. We're not saying that an implied in fact contract is a second class citizen as a matter of Arizona state law. What we are saying, Your Honor, is that in order to establish the existence and the rights under the implied in fact contract, because there is not a separate agreement, it cannot be done without reference to the administration of the ERISA plan, the payment of benefit. Okay, you're talking too fast. I don't quite understand why for purposes of ERISA, there's a difference among these three kinds of contracts, assuming that all three contracts are valid and enforceable under Arizona law. The difference under ERISA is that ERISA completely preempts a claim that seeks enforcement of a duty that originates in the ERISA plan terms. Well, of course, I understand that. But the premise in Marin was that this was a contract outside of the plan. The argument here is that there's a promise, implied in fact contract, made outside of the plan. And you're trying to tell me, at least I think you're trying to tell me that there's a critical difference between a written contract and an implied in fact contract for purposes of ERISA. Maybe I've misunderstood you, but that's what I think you just told me. There is in this kind of case where the implied in fact contract is asserting, is the rights asserted under the implied in fact contract originate from the ERISA plan. Let me back it up for a second. Even an ERISA, an express contract doesn't create a non-completely preempted right. If in order to establish the rights under the express contract, you have to establish your rights to the benefit under the plan. That's perfectly clear. So it's not like an express contract automatically gives you an enforceable independent state law duty. Even enforcing an express contract will be completely preempted. Yeah, so I think we're back where we ought to be then. And that is to say, well, what are the terms of the contract and where does the contract obligation come from? So it doesn't make any difference whether it's express, whether it's implied in fact. I don't disagree with that as a categorical matter. It's theoretically possible, I think, to have an implied in fact contract that exists outside ERISA. If, for example, the complaint alleged facts establishing that for years United had paid a plan amount, but then also separately paid some additional amount. And the plaintiffs were trying to say that that separate non-ERISA payment is what's enforceable. But that's not what's alleged in the complaint. I want to jump in here, because I'm not quite sure I'm understanding what your position is. Are you saying that because this is an implied in fact contract that's being alleged, that's based on a course of conduct, that in proving that your clients are going to say, our course of conduct, the choices that we made were dictated by the terms of a plan, and therefore that's why it's connected to ERISA? Is that your argument? That's part of the argument, yes. And in fact, that's what the plaintiffs allege. All right, so let's stop there for a second. Let's say that's true. I don't know that, because we're on pleadings and we only have one side of pleadings. Let's say that that's true. Why isn't that a summary judgment issue? I mean, I understand preemption and why you want to do this at the motion to dismiss stage, but the fact is that the pleading has alleged an implied in fact contract. Implied in fact contracts are recognized under the law and under Arizona law, as far as I can tell, they're on the same footing as any other contract. There's nothing in this pleading to me that tells me definitively we're going to have to get into the weeds of an ERISA plan to understand the terms. That may be true as a matter of proof when the parties go to prove the existence or non-existence of a implied in fact contract, but why isn't that a summary judgment and why is it right now? So a couple of things, if I can, Your Honor, is a lot built into the question. Let me unpack it. First, if you look at paragraphs 52 and 53 of the complaint, we're not talking about factual proof and how it's going to be developed. We're talking about what implied contract are they alleging on its face, on the face of the complaint, and the implied contract as paragraph 52 says, in practice, nearly all of plaintiff's non-participating provider claims submitted under employer-funded plans, you know, etc., etc., and then they say this long standing history establishes that the reasonable reimbursement rate for plaintiff's non-participating claims for emergency services is 75 to 90 percent what they are claiming. That's all based on the ERISA plan. Now, it is not enough, Your Honor, as I think your question was suggesting, that they simply allege the existence of an implied in fact contract outside of the ERISA plan because as I was suggesting earlier, imagine a beneficiary, an actual participant who does the exact same thing and says I've been paid, you know, 90 percent, received 90 percent of bill charges and that's what I've been paid for 10 straight years and now I'm being told they're only going to pay 85 percent. I'm suing under state law to get my 90 percent. I think it is absolutely unambiguous that that would be completely preempted and it's exactly what's being alleged here except by providers who necessarily are standing, have to be standing in the shoes of the participants asserting a form of a derivative claim based on the benefits claims that have been paid on behalf of participants over the years. When they're talking about payments at paragraph 52 and 53, that's not an independent non-ERISA payment. Those are the submission of claims or services provided to ERISA participants. That's the only reason the doctors are submitting claims to the plans. Again, I'm going to interrupt you. So, is your argument then that it's not possible for your what the plan provides? That's essentially correct. So, okay, if that's true, it's not possible to do it. Why not? Well, it's what it's not. That's why I wanted to caveat a little bit. What it's not possible to do is for United, especially when it's providing administrative services only, when it's not the insurer, it's paying out plan benefits. It's just jobs to process the claim. It is not possible, not permissible, it's not lawful. It's not, it would be a breach of contract and a breach of ERISA. For United to say to a provider, here's the plan rate, but, you know, we're going to give you a little extra this time, or we're going to consistently give you a little extra. That's absolutely prohibited, both by the contract and the law. So that's not what has ever happened. In every single claim that they're relying on that establishes the basis for the implied, in fact, contractual rights that they're asserting, those are claims made pursuant to ERISA plans to reimburse providers who were submitting claims standing in the shoes of the participants who have the rights. So it's the participant's right under ERISA to have their provider paid whatever the plan term is, which can vary. There's lots of different types of terms, but suppose it's 110% of Medicare charges. That's the participant's right, and when the provider submits a claim, it's on behalf of the participant to recover that amount. Any other amount, any additional amount the provider wants, since the thing's been underpaid, just, you know, in the market that thinks its services are worth more than the plan authorizes, that's between the provider and the participant. But as to the plan, the only basis for recovering from a plan is under ERISA. That's the heart of... If that argument is right, why isn't Marin wrong? For two reasons, two related reasons, your honor. First of all, Marin recognizes the authority of a plan and a plan service provider like United to enter into an express agreement that in advance identifies the amount that providers who are seeking payment pursuant to the plan will receive, and that's enforcing that amount is permissible. Even Marin couldn't possibly stand for the proposition that if the provider sues and says, my service should have been covered, but it's not, and then points to the provider agreement, that would still be completely preempted because you have to determine whether the plan even allows for coverage. The policy reason underlying it is that when you have an express agreement, whether it's written or oral, both the plan and any service provider in United's position can make arrangements in advance, they understand what the plan costs are going to be, what the costs of the benefits being provided are, and they can, you know, have their own uniform, efficient control over costs. Under the plaintiff's theory here, there's no way to determine in advance what the plan costs are. The plan could say it's what the plan is. Okay, I'm thinking. I think I interrupted Judge Miller who was about to ask the question. I was going to ask the same question you did. Sorry. So if I could just tie off that point, which is that under this theory, a plan which establishes whatever it could establish a specified rate, 90% of bill charges, and then suddenly at some point get handcuffed, even though the plan terms provide a specified amount, be stuck under state law paying out more to non-participating providers because they have established under state law that the continued payment of benefits at a particular amount under the plan creates this independent state law right. That claim is completely preempted when it's not based on a separate agreement, but it's based on historical payment for exactly the same reasons a claim by a participant under the same theory would be completely preempted. A participant or a provider suing essentially to enforce a participant's rights cannot simply allege that the continued payment of claims under a plan creates an independent state law duty. Thank you very much. Thank you. Ms. Lenzol, why don't we make a couple quick points to try to illustrate the fallacy of the argument that you just heard. Number one, in Marin, the medical provider provided services to an insured. The medical provider set a bill to the insurer. The insurer short paid that bill. The medical provider brought a lawsuit. That medical provider said we are entitled to payment of more. Why are we entitled to payment of more? Because we had our own deal. That's exactly what we have done in this particular case. We have our own deal. We had our own contract with these carriers. That contract was an implied contract. That contract is separate and distinct from any plan, and we don't seek to enforce any plan. United and its insurance carriers have already determined that the claims that we have submitted are covered claims. The rights to payment have already been established. It's only the rate of payment. And our allegation is that our contract establishes a rate of payment to which we are entitled to, and that they breached that rate of payment. What's your answer to Mr. Hacker's point that on your under your position, a beneficiary could bring a claim and say, you know, I've been getting reimbursed a certain rate that creates an implied in fact contract that you'll continue to reimburse me that way. Well, what Mr. Hacker is suggesting that there is a difference under Moran, under Blue Cross, and all of the other cases that have recognized that there are independent contractual arrangements. And in that type of circumstance, those independent contractual arrangements serve as the predicate then to the claims, and the claims then are being asserted not under the plan, but under the independent arrangements. What he is suggesting is that somehow that the court has to discern between standard plan administration and discretionary acts. That is not a test that is found in any case law, any statute, or nor can it even be discerned in from any intent then by Congress in enacting the rest in the first place. But more importantly, in this circumstance, what we have alleged and what we have asserted is an independent contract. Now, one question that was posed then by Judge Hunsaker was whether or not that it is possible then for the plan administrator, the insurance companies to do something that changes or deviates them from these plans. And the response was, well, kind of maybe not, not really. But when you take a look at the insurance companies acknowledge that they have expressed contracts, separate and apart with insurance providers, separate and apart then from any plan arrangement between an insured and the insurance company. It is those separate and distinct express agreements that was that issue in Blue Cross. And the court said, no complete preemption. There was a separate oral arrangement in Marin. The court said no complete preemption because that was the legal duty being sued upon. And third, in this case, what we have alleged is a separate and independent legal duty arising from an implied contract that is legally indistinct then from either Blue Cross or Marin. And the last point then, or I guess the last two quick points that I'd like to make is this. One of the things that the insurance companies suggest is they want to asserting plan terms or plan review. What in fact that they are doing then in that circumstance is it's a summary judgment issue. And what they're trying to contend that somehow conflict preemption being raised as a defense helps them or assist them in that defense. But conflict preemption is a different analysis. And it is not an analysis for complete preemption, establishing jurisdiction then within the federal courts. Last, there's been no argument whatsoever addressing the exploitive conduct that was asserted in our complaint. That exploitive, coercive extortion conduct that we had alleged in the complaint that serves as a foundation for our additional claims then that were found similar to Hanson then, or should be found similar to Hanson to be independent legal duties. And therefore, we would submit your honor. Thank you. Okay. Thank both sides for your helpful arguments. Emergency Group of Arizona Professional Corporation versus UnitedHealthcare submitted for decision. And that completes our arguments for this afternoon. Thank you very much. We're in adjournment.
judges: W. Fletcher, Miller, Hunsaker